# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

### No. 10-3887

---

**TRAVELERS PROPERTY AND CASUALTY COMPANY OF AMERICA, formerly known as The Travelers Indemnity Company of Illinois,**

> **Plaintiff-Appellee,**

> v.

**ROBERT K. MERICLE; MERICLE CONSTRUCTION, INC.,**

> **Defendants-Appellants.**

**(Middle District of Pennsylvania District Court 09-cv-1747)**

---
---

## BRIEF OF APPELLANTS ROBERT K. MERICLE
## AND MERICLE CONSTRUCTION, INC.

---

R. Ted Cruz
Howard M. Radzely
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-3000

Richard F. McMenamin
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

## United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. 10-3887_____

Travelers Property and Casualty Co. of America

v.

Robert K. Mericle and Mericle Construction, Inc.

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, **Mericle Construction, Inc.** makes the
following disclosure:

(Name of Party)

      1) For non-governmental corporate parties please list all parent corporations:


N/A


      2) For non-governmental corporate parties please list all publicly held companies
that hold 10% or more of the party's stock:


N/A


      3) If there is a publicly held corporation which is not a party to the proceeding
before this Court but which has as a financial interest in the outcome of the proceeding, please
identify all such parties and specify the nature of the financial interest or interests:


N/A


      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy
estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors'
committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is
active participant in the bankruptcy proceeding.  If the debtor or trustee is not participating in the
appeal, this information must be provided by appellant.


N/A

Richard McMenamin

(Signature of Counsel or Party)

Dated: 10-12-2010

(Page 2 of 2)

# TABLE OF CONTENTS

**STATEMENT OF JURISDICTION**............................................................. 1

**STATEMENT OF RELATED CASES** ...................................................... 1

**STATEMENT OF ISSUES** ......................................................................... 2

**STATEMENT OF THE CASE** .................................................................. 4

**STATEMENT OF FACTS** ........................................................................... 9

I.   **THE UNDERLYING COMPLAINTS ALLEGE PERSONAL AND BODILY INJURIES ARISING OUT OF THE ALLEGEDLY WRONGFUL DETENTION OF JUVENILE OFFENDERS BY JUDGES AND THE OWNER-OPERATORS OF THE DETENTION FACILITIES WHO BRIBED THEM.** ........................................................ 9

   A.   The Underlying Allegations Derive From Federal Prosecutions Of The Judges And Owner-Operator Of The Facilities Who Engaged In The Quid Pro Quo Involving The Placement Of Juveniles—But There Are No Allegations That Mericle Engaged In Or Even Knew About The Quid Pro Quo. ........................................................ 10

   B.   The Underlying Complaints Expressly Distinguish Between The Defendants Who Were Involved In The Quid Pro Quo And Mericle, Who Was Not. ............................ 14

      1.   The Specific Allegations Concerning Mericle Contain No Suggestion That He Was Involved In Or Even Knew About The Quid Pro Quo. .................... 15

      2.   In Sharp Contrast, The Specific Allegations Against The Other Defendants Directly Implicate Them In The Quid Pro Quo. ......................................... 16

II.  **MERICLE'S INSURANCE POLICIES WITH TRAVELERS' PROVIDE COVERAGE FOR PERSONAL AND BODILY INJURY, SUBJECT TO EXCLUSIONS THAT MUST BE CONSTRUED AGAINST THE INSURER.** .................................................................. 18

III. **TRAVELERS DENIES COVERAGE AND REFUSES TO DEFEND MERICLE AGAINST THE UNDERLYING COMPLAINTS.** ..................... 20

# TABLE OF CONTENTS
(continued)

**Page**

**SUMMARY OF ARGUMENT** ................................................................. 22

**ARGUMENT** ........................................................................................ 26

I.   **STANDARD OF REVIEW** ................................................................ 26

II.  **THE DISTRICT COURT ERRED IN HOLDING THAT TRAVELERS
     HAD NO DUTY TO DEFEND ITS INSURED WHERE THE
     UNDERLYING ALLEGATIONS FALL WITHIN THE POLICY
     PROVISIONS FOR PERSONAL INJURY COVERAGE, AND NO
     EXCLUSION APPLIES.** ..................................................................... 27

     A.   The Policies Provide Coverage For The Personal Injury
          Claims Alleged In The Underlying Complaints. .................... 27

     B.   The District Court Erred In Holding That The Penal
          Statute Exclusion Applied To Deny Coverage To
          Mericle. ................................................................................. 30

          1.   The Penal Statute Exclusion Does Not Apply
               Under Pennsylvania Law Where, As Here,
               Plaintiffs' Claims Are Grounded In Civil Statutes. ....... 31

          2.   The Penal Statute Exclusion Does Not Apply
               Under Pennsylvania Law Where, As Here,
               Plaintiffs Need Not Offer Any Proof That The
               Insured Willfully Violated Any Penal Statute To
               Prevail On Their Claims. .............................................. 33

          3.   The Penal Statute Exclusion Does Not Apply
               Where, As Here, The Violation Could Not Have
               Caused The Injuries Alleged. ....................................... 35

     C.   The District Court Erred In Applying The Knowing
          Violation Exclusion To Deny Coverage To Mericle. ............. 40

          1.   The District Court Failed To Evaluate The Specific
               Allegations Against Mericle, Mistakenly Credited
               Conclusory Assertions, And Rendered The
               Policy's Coverage Provisions A Nullity ........................ 41

# TABLE OF CONTENTS
### (continued)

**Page**

2.    The Knowing Violation Exclusion Cannot Apply
Where, As Here, There Is No Evidence The
Insured   Intended To Cause The Alleged Injury. ........ 47

III.    **THE DISTRICT COURT ERRED IN HOLDING THAT TRAVELERS
HAS NO DUTY TO DEFEND MERICLE UNDER THE BODILY
INJURY COVERAGE PROVISIONS.** ..................................................... 48

IV.    **BECAUSE COVERAGE LIES WHENEVER THERE IS ANY CLAIM
THAT  MIGHT POTENTIALLY FALL WITHIN THE POLICY, AND
IT IS POSSIBLE THAT MERICLE WILL BE FOUND LIABLE
UNDER A "KNOWN OR SHOULD HAVE KNOWN" STANDARD,
UNDER BLACK-LETTER LAW TRAVELERS HAS A DUTY TO
DEFEND.** ........................................................................................... 51

A.    On The Face Of the Complaints, Plaintiffs Have Pleaded
Negligence, And the District Court Has Explicitly
Agreed That Plaintiffs Potentially May Recover From
Mericle On A Negligence Theory .......................................... 51

B.    If Adopted, The District Court's Construction Of The
Exclusions Would Render The Coverage Provisions
Illusory. ............................................................................... 54

**CONCLUSION** ........................................................................................ 57

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685 (6th Cir. 1996).........32

*All Am. Ins. Co. v. Preferred Risk Mut. Ins. Co.*, 971 F.2d 438 (10th Cir. 1992) ................................................................................. 38

*Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71 (3d Cir. 1985) .............................................................. 26

*Amquip Corp. v. Admiral Ins. Co., No. Civ. A. 03-4411*, 2005 WL 742457 (E.D. Pa. Mar. 31, 2005)................................................. 47

*Banks v. Gallagher*, 686 F. Supp. 2d 499 (M.D. Pa. 2009)...........................53

*Brewer v. Village of Old Field*, 311 F. Supp. 2d 382 (E.D.N.Y. Mar. 31, 2004) ................................................................................. 33

*Caplan v. Johnson*, 414 F.2d 615 (5th Cir. 1969) ......................................... 29

*Carney v. Village of Darien*, 60 F.3d 1275 (7th Cir. 1995)...........................38

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979) ................. 32

*Cincinnati Ins. Co. v. Trosch*, No. 07-3412, 2008 WL 741047 (3d Cir. Mar. 20, 2008) ..................................................................... 47

*Clark v. Conahan*, No. 3:09-cv-2535, 2010 WL 3398888 (M.D. Pa. Aug. 25, 2010) ........................................................................ 53

*Colony Ins. Co. v. Mid-Atlantic Youth Services Corp.*, No. 3:09-cv-1773, 2010 WL 817703 (M.D. Pa. Mar. 9, 2010) ...................... 7

*Colton v. Swain*, 358 F. Supp. 859 (N.D. Ill. 1973) ................................. 29, 30

*Coregis Insurance Co. v. Elizabeth Township*, No. 2:05-CV-582, 2007 WL 1005599 (W.D. Pa. Mar. 30, 2007) .............................54, 55

*Cubic Corp. v. Ins. Co. of North America*, 33 F.3d 34 (9th Cir. 1994) .......... 38

*Duff Supply Co. v. Crum & Forster Ins. Co.*, Civ. Action No. 96-8481, 1997 WL 255483 (E.D. Pa. May 8, 1997) .................................................. 52

*Ethicon, Inc. v. Aetna Cas. and Sur. Co.*, 737 F. Supp. 1320 (S.D.N.Y. 1990) ................................................................................................................ 32

*Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80 (3d Cir. 1989) ..................... 36

*Hector v. Watt*, 235 F.3d 154 (3d Cir. 2001) .................................................. 29

*Heck v. Humphrey*, 512 U.S. 477(1994) .......................................................... 29

*Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440 (3d Cir. 1996) ................................................................................................................ 49

*Landmark Am. Ins. Co. v. Rider Univ.*, No. 08-1250 (FLW), 2010 WL 4063199 (D.N.J. Oct. 15, 2010) .................................................................. 41

*Lincoln Nat'l Health Cas. Ins. Co. v. Brown*, 782 F. Supp. 110 (M.D. Ga. 1992) ................................................................................................... 55

*London v. PA Child Care, LLC*, No. 3:09-c 2010 WL 150713 (M.D. Pa. Apr. 14, 2010) ..................................................................................... 7

*Nat'l Fire and Cas. Co. v. West*, 107 F.3d 531 (7th Cir. 1997) ..................... 38

*Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591 (3d Cir. 2009) ................................................................................................................ 26

*Nautilus Ins. Co. v. BSA Limited Partnership*, 602 F. Supp. 2d 641 (D. Md. 2009) .................................................................................................. 46

*North Bank v. Cincinnati Ins. Cos.*, 125 F.3d 983 (6th Cir. 1997) ................ 55

*Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*, 766 F. Supp. 324 (E.D. Pa. 1991) ........................................................................................ 45

*Selko v. Home Ins. Co.*, 139 F.3d 146 (3d Cir. 1998) ............................... 18, 26

*TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. Civ. A. 01-4708, 2002 WL 1340332 (E.D. Pa. June 18, 2002).............................. 44, 45

*U.S. Fire Ins. Co. v. Rothenberg*, Civ. Action No. 98-2275, 1998 WL 778354 (E.D. Pa. Sept. 25, 1998) .................................................. 50, 52, 53

*Wallace v. Powell*, Nos. 3:09-cv-286, 3:09-cv-291, 3:09-cv-357, 3:09-cv-630, 2010 WL 3398995 (M.D. Pa. Aug. 24, 2010).............................. 53

*Westfield Group v. Campisi*, Civ. Action No. 2:02-cv-997, 2006 WL 318415 (W.D. Pa. Feb. 10, 2006) ............................................................ 54

*Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457 (3d Cir. 1993)............... 50

## STATE CASES

*Am. States Ins. Co. v. State Auto. Ins. Co.*, 721 A.2d 56 (Pa. 1998) .............. 44

*Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050 (Pa. Super. 1992) ........ 33

*Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)...... 26, 51

*Eisenman v. Hornberger*, 264 A.2d 673 (Pa. 1970) ....................................... 50

*Humphreys v. Niagara Fire Ins. Co.*, 590 A.2d 1267 (Pa. Super. 1991) ........................................................................ 31, 32, 33

*Imperial Cas. and Indem. Co. v. State of Connecticut*, 714 A.2d 1230 (Conn. 1998) ..................................................................................... 34, 35

*Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888 (Pa. 2006) ............................................................ 49

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999) ................................................................................................... 36

*Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571 (Pa. 1961) ................................................................................................... 27

*McCabe v. Old Republic Ins. Co.*, 228 A.2d 901 (Pa. 1967)..........................36

*Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854 (Pa. 2004) ..........38

*Mohn v. Am. Cas. Co.*, 326 A.2d 346 (Pa. 1974) ...............................27, 48, 55

*Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743 (Pa. 1999)...............................27

*Stidham v. Millvale Sportsmen's Club*, 618 A.2d 945
    (Pa. Super. 1993) ......................................................................................27

*United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982
    (Pa. Super. 1986) .........................................................................27, 50, 52

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332.  On August 31, 2010, the District court entered a final judgment granting Appellee Travelers Property and Casualty Company of America's motions for summary judgment, and denying Appellants Robert K. Mericle and Mericle Construction, Inc.'s motions for summary judgment.  On September 20, 2010, Appellants Robert K. Mericle and Mericle Construction, Inc. filed a timely notice of appeal.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF RELATED CASES

Three other cases currently pending before this Court involve insurance-coverage disputes arising out of the same underlying actions:

1. *Colony Ins. Co. v. Mid-Atlantic Youth Services Corp. and Robert J. Powell*, No. 10-2833 (consolidated with Case No. 10-2887);

2. *Colony Ins. Co. v. Mid-Atlantic Youth Services Corp. and Robert J. Powell*, No. 10-2887 (consolidated with Case No. 10-2833); and

3. *General Star Indem. Co. v. Mid-Atlantic Youth Services Corp.*, No. 10-4198.

## STATEMENT OF ISSUES

This is an insurance coverage case in which the insurer carries the heavy burden of demonstrating that it has no duty to defend its insured in the underlying litigation. The insurance policies provide coverage for personal injuries and bodily injuries, and the underlying litigation alleges personal injuries and bodily injuries. The issues presented are:

1.    Did the district court err in denying coverage based on an exclusion for personal injuries caused by criminal acts committed "by or with the consent of the insured," where there are no allegations that the insured committed or consented to any criminal act that could have caused the injury?

2.    Did the district court err in denying coverage based on an exclusion for personal injuries caused by the insured with knowledge that its conduct would cause injury and violate another's rights, where there are no factual allegations that the insured had such knowledge or caused any such injury?

3.    Did the district court err in denying coverage based on its view that there was no "occurrence" of bodily injury within the meaning of the policy, where (i) an occurrence is defined by lack of intent on the insured's

part, and (ii) there are no factual allegations sufficient to show that the insured intended to cause the injury?

4.    Did the district court err in denying coverage where Pennsylvania law provides that there is a duty to defend whenever any single claim "potentially may" fall within the policy, and—on the face of the complaint—plaintiffs have pleaded a negligence claim against Mericle?

## STATEMENT OF THE CASE

This is a dispute about insurance coverage.  Appellants Robert K. Mericle and Mericle Construction, Inc. (collectively "Mericle") are the insureds who sought coverage from their insurer, Appellee Travelers Property and Casualty Co. of America ("Travelers").  Travelers denied coverage, and then filed this declaratory judgment action against Mericle.

Mericle sought coverage from Travelers to defend against numerous civil lawsuits alleging violations of, *inter alia*, 42 U.S.C. § 1983, civil RICO (18 U.S.C. § 1961, *et seq.*) and civil conspiracy.  The claims arise out of a high-profile "kids for cash" judicial corruption scandal in which juveniles were sentenced to detention centers by judges who received quid pro quo payments from the owner-operator of the detention centers, in which the judges held financial interests.  *See, e.g.,* J.A. at A-43-45, A-258-259. Mericle built the centers, and was included in the underlying complaints along with numerous other defendants.  J.A. at A-67-69, A-250-257, A-461-464.

The allegations in the underlying complaints—which allege egregious violations of the juveniles' constitutional rights in a craven attempt to fill the detention centers—are tragic.  They are based on the criminal prosecutions of the two judges (Mark Ciavarella and Michael Conahan) and the owner-

4

operator of the detention centers (Robert Powell). J.A. at A-81 n.1, A-190-191, A-257-259, A-323-428, A-461-462, A-491.

Mericle, the builder of the facilities, is lumped in as a co-defendant with the corrupt judges and the owner-operator who bribed them to wrongfully imprison the juveniles. J.A. at A-67-69, A-250-257, A-461-464. Although the underlying complaints contain numerous broad allegations that all "Defendants" engaged in a conspiracy to deprive the juveniles of their constitutional rights, the complaints make no specific allegations that *Mericle* was aware of or participated in any way in the quid pro quo that caused the injury. Nor could they. J.A. at 4470. The specific factual allegations against Mericle are limited to allegations that he paid broker's fees to the judges—which the underlying complaints describe as bribes, kickbacks, and payments—in connection with the *construction* of the facilities, and concealed such fees by paying them through Powell and defendant Pinnacle Group of Jupiter ("Pinnacle"), an entity purportedly controlled by the judges. *See, e.g.,* J.A. at A-174-175, A-178, A-264, A-483-485. In contrast, the complaints expressly allege that Powell—the owner-operator of the centers—made payments to the judges and "understood the payments to be a quid pro quo" for wrongfully sending juveniles to the detention centers. J.A. at A-174.

When Mericle sought a defense to the civil lawsuits from Travelers, the insurer denied coverage and filed this declaratory judgment action against Mericle. J.A. at A-27-41. On cross-motions for summary judgment, the district court ruled in Travelers' favor. J.A. at A-26.

Specifically, the district court held that, although the underlying claims were indeed covered under the policies' personal injury coverage provisions, the general allegations against all defendants of intentional and allegedly criminal conduct triggered exclusions in the policies that precluded coverage. J.A. at A-17-24.

First, in denying coverage under the policies for annual periods beginning January 1, 2002 and ending January 1, 2005, the district court relied solely on an exclusion that applies only for personal injury "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." J.A. at A-20-24.

Second, in denying personal injury coverage under the policies for annual periods beginning January 1, 2005 and ending January 1, 2009, the district court relied on an exclusion that applies to personal injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal injury.'" J.A. at A-17-20.

And third, the district court held that the general allegations of intentional and criminal conduct precluded occurrence-based bodily injury coverage because the underlying plaintiffs' injuries were not fortuitous, but rather intended by the insured.  J.A. at A-14-17.

In relying solely upon the general allegations against all "Defendants" in the underlying complaints, the district court did not address the specific factual allegations against Mericle—or any distinctions between those allegations and the allegations against the other defendants.  Instead, the district court simply applied its previous decisions denying coverage in two other insurance coverage cases brought by the other far more culpable defendants in the underlying actions, *Colony Ins. Co. v. Mid-Atlantic Youth Services Corp.*, No. 3:09-cv-1773, 2010 WL 817703 (M.D. Pa. Mar. 9, 2010) and *London v. PA Child Care, LLC*, No. 3:09-cv-2256, 2010 WL 150713 (M.D. Pa. Apr. 14, 2010).[1]  *See* J.A. at A-16-19.

In those cases, the district court had concluded that the specific factual allegations against the facilities, their owner-operators, and their principals precluded coverage under their respective policies.  *Id.*  In this case, the district court treated Mericle as all but indistinguishable from the other

---

[1]    The *Colony* appeal is currently pending before this Court as well.  Case Nos. 10-2887 & 10-2833.

defendants, notwithstanding the very different allegations brought against each set of defendants.  *Id.*

The district court thus determined that Travelers did not have a duty to defend or indemnify Mericle.  As a result, the district court denied Mericle's motions for summary judgment and granted Travelers' motions. J.A. at A-26.  This appeal followed.  J.A. at A-1-3.

## STATEMENT OF FACTS

I.  **The Underlying Complaints Allege Personal And Bodily Injuries Arising Out Of The Allegedly Wrongful Detention Of Juvenile Offenders By Judges And The Owner-Operators Of The Detention Facilities Who Bribed Them.**

The underlying complaints arise out of a high-profile corruption scandal in which two court of common pleas judges were indicted for accepting bribes to sentence juveniles to certain detention centers and otherwise abusing their positions as judges. *See, e.g.,* J.A. at A-43-45, A-258-259. Many of the allegations in the underlying complaints are shocking—involving a craven effort by judges to deprive juvenile offenders of their constitutional rights in exchange for cash. *Id.*

The underlying plaintiffs are juveniles (and their parents or guardians) who were adjudicated delinquent by Judge Ciavarella between 2003 and 2008. J.A. at A-46-66, A-250, A-460, A-475-481. The underlying complaints allege that Ciavarella wrongfully adjudicated the juveniles delinquent so as to detain them in juvenile detention facilities in which Ciavarella (and Judge Conahan) had a financial interest. *See, e.g.,* J.A. at 43-45, A-182-186, A-257-274; A-469. Powell owned the facilities, which were operated by Mid-Atlantic Youth Services Corp. (also a defendant in this action). J.A. at A-67-69, A-250, A-254, A-462-464.

The underlying complaints further allege that the judges demanded payments from Powell in exchange for keeping the detention facilities full; that Powell made such payments; and that Powell "understood the payments to be a quid pro quo" for Ciavarella's sending juveniles to the facilities. The underlying complaints understandably contend that this conduct constituted violations of, *inter alia*, section 1983 and civil RICO. J.A. at A-174, A-175-176, A-197, A-264-265.

> A.   **The Underlying Allegations Derive From Federal Prosecutions Of The Judges And Owner-Operator Of The Facilities Who Engaged In The Quid Pro Quo Involving The Placement Of Juveniles—But There Are No Allegations That Mericle Engaged In Or Even Knew About The Quid Pro Quo.**

The underlying complaints derive their allegations from the federal prosecution of the judges implicated in the scandal, along with the owner-operator of the detention centers. J.A. at A-81 n.1, A-190-191, A-257-259, A-323-428, A-461-462, A-491. Mr. Mericle, whose construction company built the centers, was also charged. J.A. at 4455-4478. But there were no allegations that Mr. Mericle—in sharp contrast to the judges and the owner-operator of the centers—knew of or was in any way involved in the quid pro quo at the heart of the scandal. *See* J.A. at A-174, A-175-176, A-197, A-264-265.

Indeed, as to Mr. Mericle, the underlying complaints contain no specific allegations that Mr. Mericle:

- Was involved in any way in operating the centers;

- Was involved in any way in the quid pro quo; or

- Had any knowledge of the quid pro quo.

Instead, the underlying complaints contain three types of allegations that arguably implicate Mericle.  First, the complaints are replete with blanket allegations that "Defendants" both intended to and did in fact deprive juveniles of their constitutional rights.[2]  But this is not a dispute over providing insurance to "Defendants" writ large; rather, it is a dispute over whether *Mericle* is owed coverage.  And the law is clear that broad-brush conclusory allegations are insufficient to defeat coverage.  *See infra* at 44-46.

Second, there are general allegations that all defendants had a financial interest in the placement of juveniles in the facilities.[3]  But those

---

[2]   The complaints allege, for example, that "Defendants knowingly and willfully entered into an agreement by which Ciavarella and Conahan would receive payments by and through the other defendants in connection with the construction of new detention facilities.  In return for these payments, Ciavarella and Conahan agreed to misuse their judicial offices to ensure that plaintiff youth would be placed in detention facilities."  J.A. at A-208.

[3]   The complaints allege, for example, that "[t]he consistent placement of youth at PA Child Care facilitated the subsequent construction of Western PA Child Care and the expansion of PA Child Care, directly

allegations do not speak to Mr. Mericle's knowledge of or involvement in the placement of juveniles in the facilities.

Third, there are specific allegations of an alleged separate criminal offense committed by Mericle—to wit, allegations that Mericle made payments (known as broker's or referral fees, which the underlying complaints describe in various terms, including "bribes" and "kickbacks") in connection with the construction and expansion of the facilities and that he concealed such payments. *See, e.g.,* J.A. at A-174-175. But those payments *had nothing to do with the quid pro quo* that resulted in the harm to plaintiffs.

When the centers were constructed, Mericle made broker's payments that were originally directed to Powell and Pinnacle, and, the complaints allege, a portion of the payments were then provided to the judges. *See, e.g.,* J.A. at A-193-197, A-264, A-483-487. But the underlying complaints do not allege that those referral fees (made in connection with the construction and expansion of the facilities) had anything to do with the quid pro quo that harmed the juveniles.

---

benefiting PA Child Care, Western PA Child Care, and their owners and operators, as well as the contractor, Mericle, and Mericle Construction. All defendants had a financial interest in placing juveniles in PA Child Care and Western PA Child Care." J.A. at A-178.

Nor does the government.  Rather, Mr. Mericle pleaded guilty to one count of misprision of felony for failing to disclose to federal investigators in late 2007 that he knew that a significant portion broker's fee payments made by his company were ultimately intended to be paid to Ciavarella, who was mischaracterizing the income for tax purposes.  J.A. at 4455-4478.

At Mr. Mericle's plea colloquy, the judge asked the prosecutor about Mr. Mericle's involvement in the alleged kickback and illegal juvenile adjudication and placement scheme.  The prosecutor answered directly:

> There's *no evidence* that Mr. Mericle was aware of other illegal activities on the part of Mr. Powell and the judges . . . regarding their placement of juveniles or the payment of kickbacks by Mr. Powell.

J.A. at 4470 (emphasis added).  The prosecutor added that broker's fee payments of the kind that Mericle paid to Judge Ciavarella,

> . . . are a common practice.  They are a *legal practice in real estate and in the building market* . . . . This is not a kickback or a bribe in any sense.  It is a common practice.  This is *not a[n] [il]legal quid pro quo*.

J.A. at 4472 (emphases added).

The judge went on to say:

> What you're suggesting is that any relationship Mr. Mericle had to the juvenile centers that were constructed by him or his company was ***entirely different*** than any relationship that may have existed between Mr. Powell and the two judges that you were referring to; is that correct?

J.A. at 4474 (emphasis added).  To which the prosecutor responded, "[t]hat's correct, Your Honor" and later re-emphasized that as to Mr. Mericle, "[t]here's *no quid pro quo*." *Id.* (emphasis added).

As set forth more fully below, the underlying complaints similarly distinguish between Mericle, on one hand, and Powell and other defendants, on the other.  That is not surprising, given that the Complaints were based on and derive their factual allegations from the federal prosecutions.

B.    **The Underlying Complaints Expressly Distinguish Between The Defendants Who Were Involved In The Quid Pro Quo And Mericle, Who Was Not.**

Although the underlying complaints are replete with general and conclusory assertions that all "Defendants" engaged in a kickback scheme, the are no specific allegations that Mr. Mericle did so.  *See, e.g.,* J.A. at 208-209.  To the contrary, the specific factual allegations make clear that while Mericle made broker's fee payments in connection with the construction and expansion of the facilities (and allowed those fees to be mischaracterized for income tax purposes), *only* Powell made payments that were a "quid pro quo" for improperly detaining juveniles and *only* Powell knew the payments were for that purpose.  J.A. at A-174, A-175-176, A-197, A-264-265.

14

1.      **The Specific Allegations Concerning Mericle Contain No Suggestion That He Was Involved In Or Even Knew About The Quid Pro Quo.**

The underlying complaints allege that Mericle built the detention facilities and made broker's fee payments[4] in connection therewith to Powell and Pinnacle, but that the payments were actually intended for Ciavarella. *See, e.g.,* J.A. at A-193-197, A-264, A-483-487.   There are no specific allegations whatsoever that *Mericle* engaged in any quid pro quo pursuant to which Mericle made payments in exchange for Ciavarella's sending juveniles to the facilities or adjudicating juveniles delinquent. *See, e.g.,* J.A. at A-174, A-175-176, A-197, A-264-265.

Nor do the underlying complaints contain any specific factual allegations that Mericle had any knowledge of anything occurring in Judge Ciavarella's courtroom.   For example, there are no allegations that Mr. Mericle participated in, or was involved in any discussions about improper adjudications and detentions of juvenile plaintiffs.

---

[4]     The underlying complaints describe the broker's fee payments as kickbacks and bribes, which is contrary to the express position of the prosecutors at the plea colloquy.

2.    **In Sharp Contrast, The Specific Allegations Against The Other Defendants Directly Implicate Them In The Quid Pro Quo.**

The specific allegations as to the other defendants—most notably Powell—tell a very different story. As to Powell, the underlying complaints contain specific factual allegations that he made "quid pro quo" payments to Judges Ciavarella and Conahan in exchange for Ciavarella's sending juveniles to the detention facilities. J.A. at A-174, A-175-176, A-197, A-264-265.

For example, one of the underlying complaints alleges that, wholly separate and apart from the broker's fee payments, "between February 2003 and January 1, 2007, *Powell* made hundreds of thousands of dollars in concealed payments to Ciavarella and Conahan for their past and future acts relating to PA Child Care and Western PA Child Care." J.A. at A-175-176 (emphasis added). There is no allegation that Mericle even knew about, much less had anything to do with those quid pro quo payments.

Similarly, another underlying complaint alleges—after mentioning the broker's fee payments—that:

> Defendants CONAHAN and CIAVARELLA also demanded kickbacks *from Defendant POWELL* in exchange for closing Luzerne County youth detention center and sending the juvenile offenders to private youth detention center known as PA Child Care in Luzerne County and Western PA Child Care in Butler County. . . .

16

J.A. at A-264-265 (emphasis added).[5]  Although the quoted allegations go

on to mention (the undisputed fact that) the facilities were built by Mericle,

they return to quite distinct allegations that:

> Defendant CIAVARELLA *advised Defendant POWELL*
> that Defendant POWELL was making a lot of money
> from the youth detention center and that *he had to pay*
> for that privilege.  Implicit in the demand for kickbacks
> was the ***understanding that the payments were a quid
> pro quo*** for Defendants CONAHAN and
> CIAVARELLA'S exercise of their judicial authority to
> send juveniles to Defendants PACC or WPACC and to
> take other discretionary acts.

*Id.*  Again, there is no mention of Mericle in connection with the quid pro

quo.

The specific factual allegations in the underlying complaints are thus

quite distinct as to the various defendants.  Although Mericle is alleged to

have made broker's fee payments in connection with the construction of the

facilities, *only* Powell is alleged to have understood that the payments were a

"quid pro quo" for detaining juveniles and *only* Powell—*not* Mericle—is

alleged to have made "kickbacks" as a "quid pro quo" for Ciavarella's

improper adjudications and detentions.

---

[5]    *Compare e.g.,* J.A. at A-264 ("Defendant CONAHAN and Defendant
CIAVARELLA arranged to receive a payment in the amount of
$997,600 in connection with the actions they took on behalf of the
County of Luzerne *in accomplishing the construction* of Defendant
PACC's juvenile detention facility.") (emphasis added).

II.  **MERICLE'S INSURANCE POLICIES WITH TRAVELERS' PROVIDE COVERAGE FOR PERSONAL AND BODILY INJURY, SUBJECT TO EXCLUSIONS THAT MUST BE CONSTRUED AGAINST THE INSURER.**

As a matter of law, all exclusions in insurance policies must be strictly construed against the insurer, which bears the heavy burden of proving that an exclusion applies. *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

The policies under which Mericle sought coverage are primary and excess commercial general liability policies issued by Travelers for annual periods beginning January 1, 2002 and ending January 1, 2009. The primary policies expressly grant Mericle coverage for liability for damages because of any injury arising out of various "personal injury" offenses, including injury arising out of false imprisonment or malicious prosecution. J.A. at A-1797-1799, A-2047-2049, A-2415-2417, A-2936-2939, A-3276-3279, A-3546-3549, A-3795-3798.

The policies' personal injury coverage provisions contain three relevant exclusions. First, some of the policies exclude coverage for personal injury "[a]rising out of the willful violation of a penal statute or

ordinance committed by or with the consent of the insured" (the "Penal Statute Exclusion"). J.A. at A-1797, A-2047, A-2415.[6]

Second, other policies exclude coverage for personal injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal injury'" (the "Knowing Violation"). J.A. at A-2936, A-3276, A-3546, A-3795.[7]

And third, still other policies exclude coverage for personal injury "arising out of a criminal act committed by or with the consent of the insured" (the "Criminal Acts Exclusion"). J.A. at A-2937, A-3277, A-3547, A-3796.[8]

The policies also grant Mericle coverage for liability for damages they may be required to pay because of "bodily injury" caused by an "occurrence." J.A. at A-1792, A-2041, A-2409, A-2908, A-2936, A-3248, A-3276, A-3545, A-3506, A-3765, A-3795.

"Bodily injury" is defined in the policies as "injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease

---

[6]   The Penal Statute Exclusion is contained in the policies for annual periods beginning January 1, 2002 and ending January 1, 2005.

[7]   The Knowing Violation Exclusion is contained in the policies for annual periods beginning January 1, 2005 and ending January 1, 2009.

[8]   The Criminal Acts Exclusion is contained in the policies for annual periods beginning January 1, 2005 and ending January 1, 2009.

sustained by a person, including death resulting from any of these at any time." J.A. at A-1790, A-2039, A-2407, A-2933, A-3273, A-3543, A-3792. "Occurrence" is defined in the policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. at A-1782, A-2031, A-2396, A-2921, A-3261, A-3518, A-3778. Some of the policies exclude bodily injury coverage for "'[b]odily injury' . . . expected or intended from the standpoint of the insured." J.A. at A-2909, A-3249, A-3506, A-3766.[9]

### III. TRAVELERS DENIES COVERAGE AND REFUSES TO DEFEND MERICLE AGAINST THE UNDERLYING COMPLAINTS.

Mericle timely tendered the underlying complaints to Travelers for defense and indemnity under the policies. After reviewing the complaints, Travelers notified Mericle that it was denying any coverage obligation, and, on the same day, filed a complaint seeking a declaratory judgment that it has no duty to defend or indemnify Mericle in the underlying actions. J.A. at A-32-33, A-504-535.

Travelers and Mericle both moved for summary judgment. J.A. at A-34-35, A-37-38. The district court granted Travelers' motions for summary

---

[9] The excess level for annual periods beginning January 1, 2002 and ending January 1, 2009 policies contain substantially similar personal injury and bodily injury coverage and exclusionary provisions. J.A. at A-4027-4432.

judgment and denied Mericle's motions for summary judgment.  J.A. at A-26.

In granting summary judgment to Travelers, the district court relied primarily on the broad, conclusory assertions in the underlying complaints that lumped together all of the "Defendants"—even though those general allegations are contradicted by the more specific allegations concerning Mericle that carefully do not allege that Mericle knew about, participated in, directed, or had any role whatsoever in the quid pro quo at the heart of the underlying actions.   This appeal followed.

## SUMMARY OF ARGUMENT

A sordid scandal gave rise to the underlying litigation. Two corrupt judges undermined justice and sold judicial rulings to the owner-operators of two juvenile detention facilities. As a result, numerous juveniles were denied their constitutional rights and wrongfully imprisoned. The judges and owner-operator of the facilities are rightfully being prosecuted for those actions. But, just because those defendants were parties to the corrupt bargain does not mean that everyone sued in the underlying lawsuits was similarly blameworthy.

The heart of the case is the corrupt quid pro quo—exchanging cash for the wrongful sentencing of juveniles. And nowhere in the underlying complaints is any specific allegation that *Mericle* was aware of or participated in that quid pro quo. The judges of course participated. As did Powell. But over and over again the underlying complaints take pains to specifically allege that *Powell* participated in the quid pro quo; and each time, Mericle is omitted from the allegation.

The federal prosecutors—whose case gave rise to the underlying civil lawsuit—are likewise unequivocal: there is "no evidence" that Mericle knew of the quid pro quo or had any involvement in it whatsoever.

If the district court had looked to the specific allegations of the complaints with respect to Mericle, it necessarily would have concluded that Travelers has a duty to defend in the civil litigation.  Instead, the district court relied on general, conclusory allegations about all "Defendants," and its own prior decisions denying coverage to the truly culpable defendants. That was error.

This Court should reverse for four independent reasons.  *First*, the Penal Statute Exclusion cannot apply because Mericle did not commit any penal violation that caused any injury to the plaintiffs.  The only crime that Mericle committed was failing to disclose to federal investigators that he understood that referral fee payments he made in connection with the construction of the facilities ultimately were directed to the judges, allowing those fees to be mischaracterized for income-tax purposes.  But that separate criminal offense *did not cause plaintiffs' injuries*.  Indeed, it occurred *after* most of the juveniles had been wrongfully sentenced, and so necessarily could not have caused injuries that preceded it.

*Second*, the Knowing Violation Exclusion cannot apply because there is no specific allegation that Mericle knew that anybody's rights were being violated.  Because Mericle is not alleged to have known of the quid pro

quo—or any injury whatsoever to the juveniles—the Knowing Violation Exclusion does not apply.

*Third*, the bodily-injury coverage does apply.  The district court erroneously concluded it did not because there was no "occurrence" under the policies; but "occurrence" turns on intent, and there is no allegation the Mericle intended to cause bodily injury.  Indeed, there is no allegation Mericle even knew of the injury, much less intended to cause it.

*Fourth*, Travelers has a duty to defend for an entirely separate reason: because it is possible for plaintiffs to prevail merely by proving negligence. Plaintiffs expressly allege negligence (seeking to hold Mericle liable if it "knew or should have known" of the wrongful conduct), and the district court expressly stated that plaintiffs could prevail on their section 1983 claim by proving negligence.  Black-letter Pennsylvania law provides that a duty to defend attaches if there is *any* claim that "*potentially may*" succeed under the policy.  If plaintiffs were to recover from Mericle on a negligence theory, it would mean that:  (a) plaintiffs need not prove a willful violation of a penal statute (thus defeating that exclusion), (b) plaintiffs need not prove a knowing violation of another's rights (thus defeating that exclusion), and (c) plaintiffs need not prove Mericle had intent to cause the injury (thus

falling within the definition of "occurrence" and triggering bodily-injury coverage as well).

There were many bad actors in this unfortunate saga. But Mericle— the builder who constructed the facilities and is alleged to have had nothing to do with the quid pro quo that harmed the juveniles—should not simply be lumped in with Powell and the corrupt judges. Rather, the specific allegations against Mericle should be carefully analyzed. Because there is no specific allegation that Mericle had anything to do with the corrupt quid pro quo that harmed the juveniles, Travelers has a duty to defend, and to honor the bargain of the insurance policies it issued.

## ARGUMENT

I.    **STANDARD OF REVIEW**

This Court reviews the grant of summary judgment de novo, applying the same standard as the district court. *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009). In an insurance coverage dispute like this one, exclusions in insurance policies must be strictly construed against the insurer, and the insurer bears the heavy burden of proving that the exclusion applies. *See, e.g., Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n.3 (3d Cir. 1998).

That rule of construction embodies the fundamental principle that, under Pennsylvania law, the duty to defend is extremely broad—so broad that "where a claim *potentially may* become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril." *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959) (emphasis added); *accord Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co.*, 752 F.2d 71, 75 (3d Cir. 1985).

In determining whether an insured is entitled to enforce the duty to defend against its insurer, Pennsylvania courts follows the general rule that "[t]he underlying complaint fixes the parameters of an insurer's obligation to

26

defend its insured." *Stidham v. Millvale Sportsmen's Club*, 618 A.2d 945, 953 (Pa. Super. 1993) (citations omitted).  Where "the complaint alleges a cause of action which *may fall* within the coverage of the policy, the insurer is obligated to defend." *Id.* (emphasis added).

Any ambiguities in an insurance policy must be "read in a light most strongly supporting the insured." *Mohn v. Am. Cas. Co.*, 326 A.2d 346, 351 (Pa. 1974).  And "as long as the complaint comprehends an injury which *may* be within the scope of the policy, the [insurer] *must* defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. 1986) (emphasis added); *accord Stidham*, 618 A.2d at 953-54.

II.    **THE DISTRICT COURT ERRED IN HOLDING THAT TRAVELERS HAD NO DUTY TO DEFEND ITS INSURED WHERE THE UNDERLYING ALLEGATIONS FALL WITHIN THE POLICY PROVISIONS FOR PERSONAL INJURY COVERAGE, AND NO EXCLUSION APPLIES.**

    A.    **The Policies Provide Coverage For The Personal Injury Claims Alleged In The Underlying Complaints.**

Although the district court ultimately held (incorrectly) that Travelers had no duty to defend Mericle because it concluded that certain policy exclusions applied, the district court first properly determined that the policies extend coverage as an initial matter for the claims alleged in the

underlying complaints.  J.A. at A-17-24.  The district court's initial coverage determination was correct.

In determining whether coverage exists, the particular causes of action in the underlying complaint are "not determinative of whether coverage has been triggered."  *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).  Rather, if the damages sought from the insured are for injuries that "arise out of" a tort enumerated in the policy, there is a duty to defend even if a claim may not be asserted against the insured for the enumerated tort.  *See Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 607-08 (Pa. 1961).  That standard is satisfied here, as the district court correctly concluded.

Mericle's policies with Travelers cover damages that the insured becomes legally obligated to pay because of "personal injury."  J.A. at A-1797, A-2047, A-2415, A-2936, A-3276, A-3546, A-3795.  "Personal injury," in turn, is defined as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: (a) False arrest, detention or imprisonment; [or] (b) Malicious prosecution[.]"[10]  J.A. at A-1799, A-2049,

---

[10]  "Bodily injury" is defined as "injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time."  J.A. at A-1790, A-2039, A-2407, A-2933, A-3273, A-3543, A-3792.

A-2417, A-2939, A-3279, A-3549, A-3798.   Because the nature of the factual allegations and legal claims in the underlying complaints—and the damages sought from Mericle in those complaints—arise out of alleged malicious prosecution or false imprisonment, there is coverage for those claims under the policies.

On their face, the underlying complaints seek damages for personal injuries arising out of malicious prosecution and false imprisonment. Although not cast as common-law tort claims, the § 1983 claims must be analyzed with reference to the common-law tort claims of malicious prosecution and false imprisonment in tort.  *See, e.g., Hector v. Watt*, 235 F.3d 154, 155 (3d Cir. 2001) (explaining that "the common law of torts . . . provide[s] the appropriate starting point for" analyzing § 1983 claims) (quoting *Heck v. Humphrey*, 512 U.S. 477, 483 (1994).   Therefore, this Court must "look to similar common-law causes of action" and their elements to determine the elements of the § 1983 claim.  *Id.* at 156.

Courts have uniformly held that coverage exists for § 1983 claims where, as here, (i) the policies cover the personal injury torts of malicious prosecution and false imprisonment, and (ii) the factual allegations contained in the complaints sound in those torts.  *See, e.g., Caplan v. Johnson*, 414 F.2d 615, 616-17 (5th Cir. 1969); *Colton v. Swain*, 358 F.

Supp. 859, 863-64 (N.D. Ill. 1973). There is no reason a different result should be reached in this case.

The factual allegations of the underlying complaints plainly sound in malicious prosecution and false imprisonment. *See*, *e.g.*, J.A. A-85, A-86, A-89, A-294, A-300, A-306 (alleging that the juveniles were adjudicated delinquent by Ciavarella; some were detained as a result of those adjudications; all of the adjudications were constitutionally flawed; and the delinquency adjudications and detentions were unlawful). The district court thus correctly determined that the underlying complaints trigger the personal injury coverage provisions.

> **B.    The District Court Erred In Holding That The Penal Statute Exclusion Applied To Deny Coverage To Mericle.**

After determining that the policies provided coverage for the personal injury claims alleged in the underlying complaints, the district court went astray when it held that the Penal Statute Exclusion—which excludes coverage for personal injuries "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured"—nonetheless applied to deny coverage.

That was error for three independent reasons. First, the exclusion does not apply where, as here, underlying plaintiffs' claims are grounded in remedial statutes. Second, the exclusion does not apply where, as here, the

underlying plaintiffs do not need to offer any proof that the insured willfully violated any penal statute in order to prevail on their claims. Third, the exclusion does not apply where, as here, the only penal code violation by the insured could not have caused the personal injuries alleged by the plaintiffs, and there are no specific factual allegations that such injuries were caused by the willful violation of a penal statute committed by or with the insured's consent.

1.    **The Penal Statute Exclusion Does Not Apply Under Pennsylvania Law Where, As Here, Plaintiffs' Claims Are Grounded In Civil Statutes.**

The district court erred in applying the Penal Statute Exclusion because Pennsylvania courts have held that even *broader* criminal acts exclusions do not apply where, as here, underlying plaintiffs' claims are grounded in remedial and civil statutes. In *Humphreys v. Niagara Fire Ins. Co.*, 590 A.2d 1267, 1271-72 (Pa. Super. 1991), the underlying complaint alleged that the insured violated the federal mail and wire fraud statutes, RICO and the Sherman Act. *Id.* The Pennsylvania Superior Court found that a much broader criminal acts exclusion which excludes coverage for "*any claim* arising out of any criminal act or omission of any insured" did *not* apply because "[w]hile the federal RICO statute is first and foremost a federal criminal statute, the claim giving rise to the dispute as to whether

Niagara owed Mr. Humphreys a defense is one grounded in the civil remedies section of the RICO statute." *Id.* at 1271 (emphasis added).

Courts in other jurisdictions have also similarly held that penal statute exclusions similar to the one at issue do not apply where the underlying plaintiffs' claims are "purely civil." *See, e.g., Aetna Cas. & Sur. Co. v. Sunshine Corp.*, 74 F.3d 685, 686-88 (6th Cir. 1996) (finding underlying class plaintiffs who sought $30 million for, *inter alia*, the willful violation of the federal Fair Credit Reporting Act could ultimately be held liable for a non-willful violation under the Act's civil provisions, and therefore, the insurer was not excused from providing it with a defense under the exclusion for injuries "arising out of the willful violation of a penal statute"); *Ethicon, Inc. v. Aetna Cas. and Surety Co.*, 737 F. Supp. 1320, 1335 n.14 (S.D.N.Y. 1990) (finding Penal Statute Exclusion did not apply where underlying complaint alleged violations of the antitrust laws and the underlying action "was purely civil").

Here, the underlying complaints bring claims grounded in civil statutes, § 1983 and RICO. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 601 (1979) (stating § 1983 "simply provides a remedy); *Humphreys*, 590 A.2d at 1271 (RICO has criminal and civil provisions).

32

2.    **The Penal Statute Exclusion Does Not Apply Under Pennsylvania Law Where, As Here, Plaintiffs Need Not Offer Any Proof That The Insured Willfully Violated Any Penal Statute To Prevail On Their Claims.**

The district court erred in applying the Penal Statute Exclusion because Pennsylvania courts have held that even broader exclusions do not apply where, as here, plaintiffs in the underlying litigation need not prove that the insured violated any penal statute in order to prevail on their claims.[11]

For example, in *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1057-58 (Pa. Super. 1992), the court held that an exclusion from coverage for "any dishonest, fraudulent, criminal or malicious act, or assault and battery" did *not* apply because, although the underlying complaint contained allegations of malice, the plaintiff could prove his claim without proving that the insured was malicious. As *Biborosch* explained, "[i]ll will or malice is *not* an element or a cause of action" that must be proven for the underlying plaintiff to recover and thus the insurer had a duty to defend. *Id.* at 1058; *see also Humphreys*, 590 A.2d at 1271-72 (applying same analysis in concluding exclusion of any claims arising out of intentionally fraudulent, dishonest or malicious acts *excluded* coverage where, in order for the RICO

---

[11]    So far as appellants are aware, no Pennsylvania court has yet construed the Penal Statute Exception at issue in this case.

and Sherman Act claims in the complaint against Humphreys to be proven true, underlying plaintiffs would need to establish that he acted with fraudulent intent).[12] The same is true here with respect to the underlying plaintiffs' claims, which can be proven without any evidence that Mericle willfully violated any penal statute.

Courts outside Pennsylvania have likewise applied the same principles, and reached similar conclusions, in holding that the same Penal Statute Exclusion at issue here did not apply to deny coverage of § 1983 claims. For example, in *Brewer v. Village of Old Field*, 311 F. Supp. 2d 382 (E.D.N.Y. 2004), the court held that the insurer had a duty to defend because "plaintiffs can sustain a cause of action for a Section 1983 violation without finding that the Village violated penal statutes or committed acts of fraud." *Id.*

Similarly, in *Imperial Cas. and Indem. Co. v. State of Connecticut*, 714 A.2d 1230, 1233 (Conn. 1998), the underlying complaints alleged violations of  § 1983 where employees of the Connecticut state police department had allegedly intercepted, recorded, and disclosed all telephone calls made to, from, and within state police barracks (and fraudulently

---

[12]    The personal injury coverage provisions at issue in this case do not contain such an exclusion.

concealed their wrongdoing).   The Connecticut Supreme Court rejected the

insurer's argument that the Penal Statute Exclusion precluded coverage,

explaining:

> This is not a situation . . . where, if the defendants are not
> found guilty of violating the penal component of the
> federal statute, they cannot be found liable for any other
> damages allegedly incurred.  Consequently, the claims
> cannot be characterized as arising out of 'the willful
> violation of a penal statute' so as to be excluded from
> coverage under [] the policy.

*Id.* at 1239-40 (emphasis added).

So too in this case.  The underlying plaintiffs could recover damages

for personal injuries under § 1983 claims without proving that a penal statute

was violated by Mericle (or with Mericle's consent).  *See infra* at 53.

Travelers therefore has a duty to defend Mericle against those claims.  The

district court erred in concluding otherwise.

### 3. The Penal Statute Exclusion Does Not Apply Where, As Here, The Violation Could Not Have Caused The Injuries Alleged.

Unlike other defendants in the underlying litigation, Mr. Mericle was

not charged with any crime involving bribery or kickbacks, and the

underlying complaints do not allege him to have any knowledge of or

participation in the quid pro quo—the conduct that caused the underlying

injuries. For that reason, too, the district court erred in holding that the Penal Statute Exclusion applied to deny coverage.

For the exclusion to apply, plaintiffs' injuries must "arise out of" the willful violation of a penal statute committed by the insured or with the insured's consent. That is not the case here.

As an initial matter, it is arguably unclear under Pennsylvania law whether the phrase "arising out of" means "but for" or proximate cause. *See Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989) (Becker, J., dissenting) (explaining that Pennsylvania case law has not uniformly treated "arising out of" as meaning "but for" causation and citing cases that "seem to require that a degree of proximate causation be shown").[13] That dispute is of no moment because the charge to which Mr. Mericle pleaded guilty could not, as a matter of law, be found to even have been the "but for" cause of plaintiffs' injuries.

---

13  *Compare McCabe v. Old Republic Ins. Co.*, 228 A.2d 901 (Pa. 1967) (holding that the term meant "but for" causation and finding "an obvious causal connection" excluding coverage where insured's employee died when a trench collapsed and buried him as he worked in the trench), *with Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109-10 (Pa. 1999) (Cappy, J., dissenting) (asserting that in McCabe, the court limited the construction of the term "arising out of" to the context of that case and concluding that "arising out of" in the instant case meant proximately caused by).

Specifically, Mr. Mericle pleaded guilty to one count of misprision of felony—a charge wholly unrelated to the allegations concerning the quid pro quo at the heart of the Underlying Complaints. *See supra* at pp. 13-14. In fact, the guilty plea pertains to action taken by Mr. Mericle in late 2007—*well after* most of the juveniles had been adjudicated delinquent and confined by Judge Ciavarella. J.A. at A-4455; *see also* J.A. at A-46-66, A-262, A-475-481. As a matter of unavoidable logic, a penal violation in 2007 cannot have caused injuries that occurred before that date. Even under the broadest conception of "but for" causation, it cannot flow backwards: it is always the case that ripples in a pond today were not caused by pebbles thrown tomorrow.

Moreover, the penal code violation committed by Mr. Mericle had *nothing to do* with the injuries inflicted on plaintiffs. Indeed, the factual basis upon which Mr. Mericle's plea was entered was expressly predicated on "no evidence" that he was even "aware of other illegal activities on the part of Mr. Powell and the judges . . . regarding their placement of juveniles or the payment of kickbacks by Mr. Powell." J.A. at 4470. As the government explicitly observed, there was "*no quid pro quo*." J.A. at 4474 (emphasis added).

Although the underlying complaints generally allege that all "Defendants" engaged in intentional and criminal conduct, the underlying complaints carefully avoid alleging that Mr. Mericle had any knowledge or involvement in the quid pro quo concerning the adjudication of juveniles. *See, e.g.,* J.A. at A-208. Instead, such allegations are explicitly directed at Powell alone. J.A. at A-174, A-175-176, A-197, A-264-265. Accordingly, there is no basis for applying the Penal Statute Exclusion, because plaintiffs' injuries were not caused by any penal statute violation on Mericle's part, nor the underlying complaints allege as such.[14]

---

14  None of the out-of-jurisdiction cases relied upon by the district court permit, much less require, a different conclusion. See J.A. at A-20-24 (discussing cases). *Nat'l Fire and Cas. Co. v. West*, 107 F.3d 531 (7th Cir. 1997) and *All Am. Ins. Co. v. Preferred Risk Mut. Ins. Co.*, 971 F.2d 438 (10th Cir. 1992) involved allegations of child sexual abuse, which courts have deemed an "exceptional" circumstance permitting an "implied intent" finding. The Pennsylvania Supreme Court has expressly declined to extend the doctrine beyond that context. *See Minnesota Fire and Cas. Co. v. Greenfield*, 855 A.2d 854, 864-65 (Pa. 2004). Although *Carney v. Village of Darien*, 60 F.3d 1275 (7th Cir. 1995) did not involve sexual abuse of minors, it did involve sexual misconduct and coercion—and the factual allegations concerning the insured (a municipality) indicated that, unlike in this case, the insured knew of or consented to the penal statute violations. And in all three cases, it was much clearer that the plaintiffs' injuries "arose from" the insured's conduct because, unlike in this case, the harm came at the hands of the insured—not a third party. In *Cubic Corp. v. Ins. Co. of North America*, 33 F.3d 34 (9th Cir. 1994), the underlying complaint did not allege a § 1983 claim, but unfair business practices and bribery, and, unlike here, the insured had pleaded guilty to the bribery, in stark

To the extent that a causal link can be said to exist between plaintiffs' alleged injuries and Mericle's alleged payment and concealment of referral fees, it is far too remote to satisfy the "arising under" requirement—even under the "but for" standard. The only specific factual allegations against Mericle are that Mericle made concealed broker's fee payments in connection with the *construction* of the facilities. J.A. at A-193-197, A-264, A-483-487. Even assuming such allegations constitute the willful violation of a penal statute, it cannot be said that plaintiffs' false imprisonment and malicious prosecution injuries were caused by the concealed broker's fee payments. Indeed, the underlying complaints allege that it was *Powell's* payments that caused the juveniles to be detained in the facilities he owned and—along with Judge Ciavarella's denial of plaintiffs' constitutional rights—that resulted in plaintiffs' injuries. J.A. at A-174, A-175-176, A-197, A-264-265. There are no factual allegations that Mericle consented to, or was even aware of, Judge Ciavarella's conduct in the courtroom. Under those circumstances, Travelers failed to carry its burden of showing that the plaintiffs' injuries arose out of a willful violation of a

---

contrast to this case, where there is no allegation or charge of bribery or quid pro quo by Mericle.

penal statute committed by Mericle, and the district court erred in concluding otherwise.[15]

### C.  The District Court Erred In Applying The Knowing Violation Exclusion To Deny Coverage To Mericle.

Contrary to the district court's determination, the Knowing Violation Exclusion does not apply where, as here, there are no specific, factual allegations that the insured caused or directed an act *knowing* that it would violate another's rights and inflict personal injury, as the exclusion requires. The district court erred in applying the exclusion for two independent reasons.  First, the district court failed to acknowledge the distinctions between the factual allegations against Mericle, on one hand, and those against other defendants, on the other—as Pennsylvania law requires. Second, where, as here, there is no evidence that the insured *intended* to

---

15  The district court did not address the Criminal Acts Exclusion, which excludes coverage from policies with annual periods beginning January 1, 2005 and ending January 1, 2009 for "'Personal injury'…arising out of a criminal act committed by or with the consent of the insured." J.A. at A-2937, A-3277, A-3547, A-3796.  Although the Criminal Acts Exclusion is broader than the Penal Acts Exclusion in that Travelers need not demonstrate a "willful" criminal act, the Criminal Acts Exclusion does not apply for the same reasons that the Penal Statute Exclusion does not.  That is, plaintiffs need not prove that their injuries arose out of a criminal act committed by Mericle or with Mericle's consent in order to recover under their legal claims.

cause the alleged injury, the insurer has a duty to defend unless and until it

can carry its burden of marshalling such evidence.[16]

1.   **The District Court Failed To Evaluate The Specific Allegations Against Mericle, Mistakenly Credited Conclusory Assertions, And Rendered The Policy's Coverage Provisions A Nullity.**

*The district court failed to evaluate the specific allegations against*

*Mericle.*    In multi-defendant cases like this one involving different

allegations against different defendants, it is the court's duty to evaluate the

specific allegations against the insured to determine whether there is

coverage.  *See*, *e.g. Landmark Am. Ins. Co.  v. Rider Univ.*, No. 08-1250

(FLW), 2010 WL 4063199 (D.N.J. Oct. 15, 2010) (parsing specific

allegations against each fraternity member concerning a hazing death, and

determining that coverage for some members was precluded by a Hazing

Exclusion in the fraternity's insurance policy, while coverage for others was

not).

This parsing of the factual allegations against multiple defendants is

exactly what the district court should have done here.  Instead, the district

court simply applied its previous decisions in *Colony Insurance* and *London*,

in which it had found that the exclusion precluded coverage for the claims

---

16  So far as we are aware, no Pennsylvania state court has analyzed the
    Knowing Violation Exclusion.

against the far more culpable defendants, namely the owner and operator of the facilities and the facilities themselves. *See* J.A. at A-17-20. As already demonstrated, however, the specific factual allegations against Mericle, on one hand, and the "facilities" defendants, on the other, are strikingly different. It was error for the district court not to analyze each defendant on its own merits.

For example, in denying coverage to Mericle, the district court expressly relied on a factual allegation made only against *Powell*—not Mericle. *See* J.A. at A-19. That allegation—that *Powell* made payments to the judges so they would send juveniles to his detention facilities—only highlights the notable *absence* of any such allegation against Mericle. *See* J.A. at A-174, A-175-176, A-197, A-264-265.

The district court went on to mention an allegation that Mericle had a financial interest in placing juveniles in the facilities (because, according to the Underlying Complaints, the "success" of one facility led to Mericle's building another one). *See* J.A. at A-19. But that allegation says nothing about Mericle's *knowledge* of the underlying circumstances of the wrongful juvenile placements—knowledge that the Knowing Violation Exclusion requires.

Aside from the allegations against Powell and the general allegations against all "Defendants," the only other allegation cited by the district court concerning Mericle's knowledge of the juvenile placements cannot justify the exclusion either, because that allegation facially mischaracterizes the document attached in support of the allegation.  *See* J.A. at A-81 n.1, A-190-191, A-257-259, A-323-428.  The allegation is as follows:

> On January 26, 2009, the United States Attorney for the Middle District of Pennsylvania filed a Bill of Information alleging two counts of fraud against Ciavarella and Conahan.  The Bill of Information describes, inter alia, a conspiracy among the judges and at least two other unnamed parties, ***presumed to be Powell and Mericle***, to conceal $2.6 million in payments to the judges from owners of juvenile correctional facilities, ***in exchange for, inter alia, referring children who appeared before Ciavarella to use these juvenile correctional facilities.***

J.A. at A-190 (emphasis added).  In support of that allegation, one of the underlying complaints attaches the Bill of Information in the federal proceedings against the former judges.  J.A. at A-323-45.  But on its face the attached Bill of Information (incorporated into the underlying complaints) does *not* state that the unnamed individual ("presumed" to be Mericle) made *any* payments to the judges in a quid pro quo for sentencing juveniles to the detention facilities.  *Id.*   That allegation—the cause of the injury to

plaintiffs—is made only as to Powell.  *See* J.A. at A- J.A. at A-174, A-175-176, A-197, A-264-265.

Had the district court considered the specific factual allegations against Mericle—as set forth *supra*, at pp. 14-17—it  would have found there are *none* alleging that Mericle caused or directed any act knowing it would violate plaintiffs' rights and inflict personal injury (as the Knowing Violation Exclusion requires).

***The district court mistakenly relied upon conclusory assertions.*** Instead of parsing the specific factual allegations against Mericle, the district court relied on the underlying complaints' conclusory, broad assertions as to *all* "Defendants" in concluding that the exclusion applied to Mericle.  Under controlling Pennsylvania law, that was error.

Pennsylvania courts have made it clear that in making coverage determinations, conclusory assertions, hyperbole, and broad overstatements in the underlying complaints are irrelevant to the analysis and should be disregarded.  *See, e.g., Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 61 (Pa. 1998) (mere "conclusions" have "no effect whatsoever" in making coverage determinations) (citing 44 Am. Jur. 2d, *Insurance* § 1413 (1982)); *accord TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. Civ. A. 01-4708, 2002 WL 1340332, at *10 (E.D. Pa. June 18, 2002) (same for

"bare assertion[s] of knowledge or willfulness" because they "merely state a conclusion of law"); *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.*, 766 F. Supp. 324, 330 (E.D. Pa. 1991) (same for "overstatements, hyperbole or other vagrancies"), *rev'd in part on other grounds*, 961 F.2d 209 (3d Cir. 1992 table).

Here, the district court erroneously relied upon just such conclusory assertions in making its coverage determination. For example, the district described the Underlying Complaints as "alleging" that "***Mericle intentionally conspired with the judges*** . . . to violate the rights of hundreds of juvenile offenders," and that "the false imprisonment of the underlying plaintiffs was caused by or at the direction of Mericle and Mericle Construction" with "knowledge that they would be violating the rights of the juveniles by precluding them from their right to an impartial tribunal and other constitutionally protected procedural safeguards." J.A. at A-19-20. These assertions, however, are wholly conclusory. They are addressed broadly to all "Defendants," and they allege no *specific facts* concerning Mericle's conduct. In analyzing Mericle's insurance coverage, the district court should have looked to the specific allegations concerning Mericle, not the broad-brush allegations against all "Defendants"—especially where the complaints are careful to distinguish between Mericle and the other more

culpable defendants when addressing the quid pro quo at the heart of the matter. Under the Pennsylvania authorities cited above, the conclusory general statements about all "Defendants" should have been disregarded in favor of the specific allegations against this defendant, Mr. Mericle.

*The district court's construction of the exclusion would render the coverage provisions a nullity.* By crediting those conclusory assertions—while ignoring the specific allegations—concerning Mericle, the district court did not simply err in its analysis. It also rendered a decision that, if permitted to stand, will effectively encompass *all* intentional acts within the exclusion's scope. Under that construction of the exclusion, coverage would be excluded for personal injuries that the policies *expressly cover*, including malicious prosecution and false imprisonment. Such a construction must be rejected because it would render the coverage provisions a nullity. *See Nautilus Ins. Co. v. BSA Limited Partnership*, 602 F. Supp. 2d 641, 655 n.7 (D. Md. 2009) ("If the [penal statute] exclusion precluded coverage for false imprisonment claims, litigation coverage for suits bringing those claims would be illusory.").

2.    **The Knowing Violation Exclusion Cannot Apply
Where, As Here, There Is No Evidence The Insured
Intended To Cause The Alleged Injury.**

The district court erred in applying the Knowing Violation Exclusion

for the additional (and independent) reason that where, as here, the insurer

has not proffered any evidence that the insured *intended* to cause the alleged

injury, the insurer has a duty to defend unless and until it can carry its

burden of marshalling such evidence.  *See, e.g., Amquip Corp. v. Admiral

Ins. Co.*, No. Civ. A. 03-4411, 2005 WL 742457, at *6 (E.D. Pa. Mar. 31,

2005) (noting that where the evidence establishes that "some or all of the

conduct was unintentional, reckless or merely negligent," the insurer has a

duty to defend) [17]    Travelers has failed to set forth any evidence

demonstrating that Mericle intended to cause Underlying Plaintiffs' injuries.

What's more, in light of the government's own extensive investigation, and

its express conclusion that there is no such evidence, it is apparent that

Travelers cannot do so.  J.A. at 4470-4474.

---

[17] *Cf. Cincinnati Ins. Co. v. Trosch*, No. 07-3412, 2008 WL 741047, at *1
(3d Cir. Mar. 20, 2008) (affirming stay of insurance coverage action
pending resolution of underlying action and explaining that "[a]lthough
the complaint in the Underlying Action avers conduct that would be
excluded because of the alleged intent and knowledge of the [insureds],
there is the potential for the claim to be covered if a different level of
knowledge or intent were to be found by the jury").

Accordingly, because there are no factual allegations that Mericle caused or directed any act with knowledge that it would violate plaintiffs' rights and inflict personal injury, the Knowing Violation Exclusion does not apply, and Travelers has a duty to defend Mericle under the relevant policies.

III.  **THE DISTRICT COURT ERRED IN HOLDING THAT TRAVELERS HAS NO DUTY TO DEFEND MERICLE UNDER THE BODILY INJURY COVERAGE PROVISIONS.**

In addition to its duty to defend Mericle under the *personal* injury coverage provisions, Travelers also has a duty to defend Mericle under the *bodily* injury coverage provisions, which provide coverage for (i) "bodily injury" (ii) caused by an "occurrence."  J.A. at A-1792, A-2041, A-2409, A-2908, A-2936, A-3248, A-3276, A-3545, A-3506, A-3765, A-3795.  There is no dispute that the underlying complaints seek damages for "bodily injury."  So Travelers owes Mericle a defense if plaintiffs have alleged that their injury was caused by an "occurrence," which must be determined from Mericle's perspective as the insured.  *Mohn v. Amer. Cas. Co. of Reading*, 326 A.2d 346, 348 (Pa. 1974).  Because that is what plaintiffs have alleged, the district court erred in concluding otherwise.

An "occurrence" is defined in the policies as "an *accident*, including continuous or repeated exposure to substantially the same or general harmful

conditions." J.A. at A-1782, A-2031, A-2396, A-2921, A-3261, A-3518, A-3778 (emphasis added). An "accident," in turn, has been defined by the Pennsylvania Supreme Court in this context as an "'unexpected and undesirable event,' or 'something that occurs unexpectedly *or unintentionally.*'" *Kvaerner Metals Division of Kvaevner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897-98 (Pa. 2006) (emphasis added). Additionally, like most policies containing occurrence-based coverage provisions, the policies here contain an exclusion for bodily injury "expected or *intended from the standpoint of the insured.*" J.A. at A-2909, A-3249, A-3506, A-3766 (emphasis added).[18] So whether there is coverage boils down to whether *Mericle intended* the alleged harm. Because there is no evidence that it did, Mericle is owed a defense by Travelers.[19]

In analyzing whether there is coverage for bodily injury, Pennsylvania courts apply a subjective standard to determine whether the insured intended

---

18  Pennsylvania courts have held that this exclusion is ambiguous as a matter of law and must be construed against the insurer. *See, e.g., Elitzky*, 517 A.2d at 989.

19  The insured bears the burden of making a prima facie showing that an injury was caused by an occurrence. *See Koppers Co., Inc. v. Etna Cas. & Sur. Co.*, 98 F.3d 1440, 1447 (3d Cir. 1996). Once such a showing is made, the burden shifts to the insurer to demonstrate that the insured intended to cause the same type of harm which gives rise to liability to the insured. *Id.* Because either way the determination hinges on whether the insured intended to cause plaintiffs' harm, many courts combine their analysis.

harm. *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 460 (3d Cir. 1993). Therefore, "it is not sufficient that the insured intended his *actions;* rather, for the resulting injury to be excluded from coverage, the insured must have specifically intended *to cause harm.*" *Id.* (emphasis in original) (citing *Elitzky*, 517 A.2d at 987 and *Eisenman v. Hornberger*, 264 A.2d 673, 674-75 (Pa. 1970)).

Under that controlling standard, Mericle is entitled to a defense because, as demonstrated *supra* at pp. 10-17, the Underlying Complaints are devoid of any specific factual allegations that Mericle had the requisite intent to cause the Underlying Plaintiffs' alleged injury. *See, e.g.*, *U.S. Fire Ins. Co. v. Rothenberg*, Civ. Action No. 98-2275, 1998 WL 778354, at *1-5 (E.D. Pa. Sept. 25, 1998) (insurer had duty to defend even where underlying complaint alleged the insured acted deliberately, unlawfully and maliciously—and knew that harm was likely to result—because (in part) specific allegations of requisite intent to inflict bodily injury were absent).

IV.  **BECAUSE COVERAGE LIES WHENEVER THERE IS ANY CLAIM THAT MIGHT POTENTIALLY FALL WITHIN THE POLICY, AND IT IS POSSIBLE THAT MERICLE WILL BE FOUND LIABLE UNDER A "KNOWN OR SHOULD HAVE KNOWN" STANDARD, UNDER BLACK-LETTER LAW TRAVELERS HAS A DUTY TO DEFEND.**

As the district court acknowledged, (J.A. at A-14), whenever "a claim *potentially may* become one which is within the scope of the policy," the insurance company has a duty to defend. *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959) (emphasis added). At this stage in the litigation, that is plainly the case here.

A.  **On The Face Of the Complaints, Plaintiffs Have Pleaded Negligence, And the District Court Has Explicitly Agreed That Plaintiffs Potentially May Recover From Mericle On A Negligence Theory.**

As pleaded, plaintiffs are attempting to recover from Mericle if it "knew or should have known" of the likely injury to the juveniles. That is a negligence standard, and liability for negligence necessarily falls within the scope of coverage. If plaintiffs were to prevail on a negligence theory, it would mean (1) they did not need to prove a knowing violation of the penal code (thus not falling within the Penal Statute Exclusion); (2) they did not need to prove a "knowing" violation of another's rights (thus not falling within the Knowing Violation Exclusion), and (3) they did not need to prove intent to cause bodily injury (thus not falling outside the definition of "occurrence" for bodily injury coverage).

For example, plaintiffs assert that:

> At all times relevant hereto, Defendants *knew or should have known and acted with deliberate indifference* to the fact that the actions of Defendants CONAHAN and CIAVARELLA created the potential for an increased number of juveniles to be sent to PACC and/or WPACC, thus ensuring high occupancy rates and increasing the revenues of PACC and/or WPACC *and thereby increasing the return on investment and/or other remuneration to Defendants POWELL, ZAPPALA, and others*.

J.A. at A-306 (emphasis added); *see also id.* ("By reason of the aforesaid actions *and inactions* of Defendants, Parent Plaintiff suffered…emotional distress and/or mental anguish." (Emphasis added)).[20]  Those allegations sound in negligence, or at most, recklessness[21]—neither of which falls within the exclusions.  *See, e.g., Duff Supply Co. v. Crum & Forster Ins. Co.*, Civ. Action No. 96-8481, 1997 WL 255483, at \*14 (E.D. Pa. May 8, 1997) (duty to defend where complaints included allegations of recklessness and the claims could have been proven by reckless conduct); *Rothenberg*, 1998 WL 778354, at \*10 ("If [the insured] intended financial injury, and bodily

---

[20]   *See also, e.g.,* J.A. at A-293, A-302, A-313-314.

[21]   *See Elitzky,* 517 A.2d at 989 (finding that an actor's conduct is in reckless disregard of the safety of another if he "does an act or intentionally fails to do an act which it is his duty to do, *knowing or having reason to know of facts* which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negli-gent [sic]").

injury was an unintended result, then the bodily injury would not fall under the exclusion because it could not be considered "the same general type [of injury] which the insured intended to cause.").

And, at this stage, the district court seems to agree that plaintiffs could recover by proving mere negligence. Indeed, in its separate opinions denying Mericle's Rule 12(b)(6) motions in the underlying actions, the district court expressly noted that plaintiffs may be able to prove their § 1983 claims by showing that defendants set into motion a series of acts by others that defendants "***know[] or reasonably should know*** would cause others to inflict the constitutional injury." *Wallace v. Powell*, No. 3:09-cv-286, 3:09-cv-291, 3:09-cv-357, 3:09-cv-630, 2010 WL 3398995, at *7 n.4 (M.D. Pa. Aug. 24, 2010) (quotations omitted) (emphasis added); *see also Clark v. Conahan*, No. 3:09-cv-2535, 2010 WL 3398888, at *28 n.4 (M.D. Pa. Aug. 25, 2010).[22]

---

[22] On the merits, Mericle vigorously disagrees that negligence is the proper standard for liability; rather, because Mericle is not a state actor, underlying plaintiffs need to prove that Mericle conspired with state actors to violate underlying plaintiffs' federally-protected rights. In order for a defendant to be held liable for a § 1983 conspiracy, a plaintiff must prove that the particular defendant shared in the object of the conspiracy to violate the plaintiff's rights. *Banks v. Gallagher*, 686 F. Supp. 2d 499, 509-10 (M.D. Pa. 2009) (J. Caputo) (holding that "[i]n order to establish a conspiracy claim against the Defendants pursuant to Section 1983, there is a requirement of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the

Because plaintiffs have alleged negligence on the face of the complaints—and because the district court has explicitly indicated that it agrees that plaintiffs may recover on a negligence theory—then, under black-letter Pennsylvania law, because plaintiffs "*potentially may*" recover within the policy, Travelers has a duty to defend. *See, e.g., Westfield Group v. Campisi*, Civ. Action No. 2:02-cv-997, 2006 WL 318415, at *17 (W.D. Pa. Feb. 10, 2006).

### B.    If Adopted, The District Court's Construction Of The Exclusions Would Render The Coverage Provisions Illusory.

The district court determined that allegations of false imprisonment or malicious prosecution—the crux of plaintiffs' claims—constitute allegations of a willful violation of a penal statute and also the knowing violation of another's rights.   J.A. at A-17-24.   That construction of those exclusions cannot be correct, because it renders the coverage provisions entirely illusory—and for just that reason has been rejected by court after court.[23]

---

defendants *with the specific intent to violate the aforementioned right*") (emphasis added) (citations and internal quotations omitted).  However, for purposes of the duty to defend, it does not matter if Mericle or the underlying plaintiffs are correct—the only question is whether plaintiffs have brought a claim that "*potentially may*" fall within coverage, and on the face of the complaints, plaintiffs have done exactly that.

23  *See, e.g., Coregis Ins. Co. v. Elizabeth Township*, No. 2:05-CV-582, 2007 WL 1005599, at *15-16 (W.D. Pa. Mar. 30, 2007) (rejecting application of employment-related practices exclusion because doing so

On the commercial market, Travelers sold—and Mericle purchased year after year—insurance for claims alleging false imprisonment or malicious prosecution.  If the district court's interpretation were correct, then Mericle was purchasing a null set.  It cannot be the case that every claim of malicious prosecution or false imprisonment falls within the exclusions, because that would render the purchased insurance meaningless.

Instead, the commonsense interpretation of the policies should control, namely that if plaintiffs have alleged—as the underlying plaintiffs did here—negligent or reckless violations or claims on which they can prevail without proving that the insured violated or consented to the violation of any penal statute, then coverage lies.  In contrast, if plaintiffs have alleged only

would render illusory coverage for "personal injury" "arising out of" "false arrest, detention or imprisonment" or "malicious prosecution" and "bodily injury" caused by an "occurrence" in the course of "law enforcement activity"); *North Bank v. Cincinnati Ins. Cos.*, 125 F.3d 983, 987 (6th Cir. 1997) ("[T]he definition of personal injury which includes intentional torts and the definition of 'occurrence' which excludes intentional torts are inconsistent and create an ambiguity."); *Lincoln Nat'l Health Cas. Ins. Co. v. Brown*, 782 F. Supp. 110, 112-113 (M.D. Ga. 1992) ("The policy defines 'personal injury' to mean not only 'bodily injury' but also 'false arrest,' 'malicious prosecution,' and 'assault and battery.'  When this definition is read with the provision that only unintentional and unexpected 'personal injury' is covered, then the policy only applies to unintentional false arrest, unintentional malicious prosecution, and unintentional assault and battery.  This is complete nonsense."); *cf. Mohn*, 326 A.2d at 351 ("[W]here the contract is one of insurance any ambiguity in the language of the document is to be read in a light most strongly supporting the insured.").

deliberate, criminal violations which caused their injuries, coverage does not lie.

The difference between Powell and Mericle illustrates this distinction. Powell is alleged to have: (1) made the illegal bribes; (2) known that they were for an illegal quid pro quo; and (3) intended that the corrupt judges would violate the rights of the juveniles as a result.  Mericle, in contrast, is not alleged to have made the quid pro quo bribes or to have had any actual knowledge of them.  Nor is he alleged to have intended (or known of) any harm to the juveniles.  Rather, plaintiffs are attempting to draw Mericle into this scandal based on allegations that he: (1) built the facilities; and (2) concealed payments related to construction.  Neither caused any harm to the juveniles, and a claim based on what Mericle "should have known" about the corrupt quid pro quo is not a claim within the scope of the exclusions. Otherwise, if coverage does not lie to defend against the claims against Mericle, then Travelers sold a policy that covered nothing whatsoever.

## CONCLUSION

For the foregoing reasons, the Court should reverse the judgment below and render judgment for Mericle.

Respectfully submitted,

/s/R. Ted Cruz
R. Ted Cruz (TX Id. 24001953; DC Id. 459672)
Howard M. Radzely (DC Id. 437957)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-3000

Richard F. McMenamin (PA Id. 26209)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

Dated: January 31, 2011

## ATTORNEY CERTIFICATIONS

**Bar Membership**

I am a member in good standing of the bar of this Court.

**Word Count and Typeface**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32. It contains 11,704 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii);

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, Version 2003 in 14-point Times New Roman font.

**Service Upon Counsel**

This brief was submitted electronically to the Court on January 31, 2011, and on the same date, an original and ten copies were hand delivered to the Court, along with four copies of the appendices. In addition, the brief and appendices were served electronically upon Travelers' counsel, all of whom are Filing Users:

> Samuel J. Arena
> Karl S. Myers
> Heather T. Fritts
> Stradley, Ronon, Stevens & Young
> 2600 One Commerce Square
> 2005 Market Street
> Philadelphia, PA 19103
> sarena@stradley.com
> kmyers@stradley.com
> hfritts@stradley.com

**Identical Compliance of Briefs**

The text of the electronic version of this brief is identical to the text of the paper copies filed with the Court and served upon counsel.

**Virus Check**

I certify that McAfee VirusScan Enterprise, version 8.7.0i was run on the electronic file and that no virus was detected.

/s/R. Ted Cruz
R. Ted Cruz
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-3000

Dated:  January 31, 2011